Welcome to the fourth circuit. Our first case is United States versus Ford. Mr. Tindall, I'll be glad to hear from you. Where's the mystery? He doesn't have a lawyer. Well, that ought to be easy. May it please the court, counsel for the government. Those statements by the trial court during an ex parte hearing with the government highlight the reality that Mr. Ford could not have waived knowingly and voluntarily and intelligently his right to counsel in this case. The procedural, substantive, and constitutional violations in this case are so far outside the norms that no person could knowingly waive their right to counsel under these circumstances. To begin with, this ex parte hearing, it does, it is after Mr. Ford is convicted and it relates to sentencing. Well, for a waiver of counsel, he just has to be, the defendant just has to be capable of waiver. He doesn't have to be capable of representing himself. That is true. So why, at the time that the decision was made, is there proof that he was incapable of representing himself? Well, there's not proof that he's incapable, but what the court, what the Singleton court talks about is looking at the whole record. And the person has to do so knowingly and he has to do so voluntarily and intelligently, the fact that he's got sense enough to represent himself is not enough, he has to know what he's getting into and that's why it's important in general for the court to have some dialogue and say, you know, look, you're going to be in jail, you can't do everything a lawyer does. Now, I realize the courts have not established a particular form or any sort of format for a person or certain questions that have to be asked before a person can waive their right to counsel. What the cases say is the courts have to look at the entire record. And in general, the courts look to, did the person call witnesses? Could they cross-examine witnesses? Could they conduct themselves in a rational manner during the court? But the inverse is also true. In this case, we have the court conducting itself in a way that's so far outside the norms that a person couldn't intelligently know that that was going to happen. There's no way Mr. Ford can predict that a court, a trial judge, might have a conversation with government's counsel that would wander into a sentencing proceeding, that would discuss guideline ranges, that would talk about and then announce what he's going to do at the sentencing proceeding. That's not predictable. And therefore, the person can't intelligently ... I can see where that gets to a separate claim of error, that there was an imparte hearing, which I think the government concedes.  But I'm not sure how that relates to whether or not he was permitted to be pro se. Well, Your Honor, as the ... It seems like you're arguing if we go through the court proceeding and we get to the end, and he's sentenced, and a lawyer would have done a better job than that, it goes to the threshold question of whether or not the defendant should have been allowed to proceed pro se. Well, that's what the Singleton court says you don't do. Singleton court said it doesn't matter if a lawyer would have done a better job. What really matters is whether the person was able to understand what they were doing, call witnesses, basically conduct the trial. In this case, the opposite is true, because it wasn't predictable that the trial court would conduct the proceedings in the way it did. The ex parte hearing is a violation of procedural, substantive, and or refusing to consider his objections is another violation. So, that's not predictable when you can't knowingly, intelligently waive your rights when you're expecting the court. In all of the cases that the government ... Just to clarify, you're talking about predictability and knowingly and intelligently waiving. He has to be able to knowingly and intelligently waive his right to counsel, right, but you're not arguing, are you, that he has to knowingly waive his right to be present for sentencing? You seem to be blurring the ex parte discussion with waiving counsel, which happened earlier. I just want to make sure I'm clear. Well, he does waive counsel early, but the courts don't focus just on that dialogue because so often in the cases that are cited, there is very little colloquy between the trial judge and the defendant. In this case, there were very few questions. Right, but no one's arguing that he somehow waived his right to be present for sentencing or anything like that. So, predicting that that would have happened is kind of neither here nor there, it seems. That's true. What we're arguing, Your Honor, is that when a person waives their right to counsel, they expect the trial court to conduct the proceedings as is appropriate within the law. In all of the cases where the government has cited and we have cited, that's what happened. It's not a question of, it might be a question of whether the court asked, you know, maybe we, as the courts have said, we wish the trial court had asked more questions, we wish it had been clearer, but when you look at the whole record, he clearly, knowingly, intelligently, and voluntarily waived his rights. I don't see how you can do that when you're expecting a trial court to conduct proceedings in a certain way, and then the court veers off in a different direction. That's the argument. That's not saying that he waived his right to be present at sentencing. He just simply accepted it as the, as the lead of court said, the public trust in the, the person should have confidence in the judge's use of reason underlies the public trust in the judicial institution, and if a person who's a defendant decides to waive counsel, he does so certainly expecting that to happen, and that didn't happen in this case. So that's, that's what we're arguing. Not that, we're not trying to blur the lines between sentencing and his waiver. His waiver does happen at the beginning, but that's not the end of the inquiry according to Singleton or Bernard. The inquiry is the whole case and everything within the case, and we're asking the court to consider all of the proceedings, to consider what Mr. Ford would have expected at that time, and that he couldn't have intelligently, voluntarily, and knowingly waived those rights. So that, that argument essentially goes to a claim for a new trial. Right. Correct. So you have two other arguments. If perchance we were to disagree on the grant of a new trial, tell us about the sentencing. Well, you know, the, the guidelines were, as the government's conceded error as it relates to the ex parte proceeding. Um, the concerns we have about that is that during that ex parte proceeding, the court asked the, uh, United States attorney about the guideline range. The United States attorney described the guideline range and then explained why the guidelines were what they are. Well, that particular issue, setting aside the actual sentencing hearing later, I don't see that there's an argument that other than a per se violation, that there was ever any prejudice. Well, there's prejudice. I don't think that you've told us, you know, here's the harm that occurred because of that. Well, the harm that occurs is the judge doesn't address the guidelines at the sentencing proceeding, which the judge is- Right. Well, that's different from the ex parte part. That, that's correct. Well, the prejudice in the ex parte proceeding is the judge reaches a conclusion. He says, he announces a conclusion. He says that, okay, it's 360 to life. Um, this is a, you know, it's 10 year max. He's going to get 10 years. He even says, where's the mystery here? Well, I, let me ask you this. I'm guessing the government's going to make this argument that he, um, even though the district court judge considered the cross-reference of this attempt to murder on the, in the state court, that his sentence is still what it is, the max was 10 years. He didn't, it wasn't the 360 to life. Right. I'm just, I'm curious to hear your response. And it sounds like that's a different issue, but the bottom line is Mr. Ford objected to the cross-reference. The court did not address the cross-reference other than to say, as a matter of law, I find that your exchange of gunfire is an attempted murder. And that's not the standard that the court is, is duty bound to apply. What should he have done? I mean, he'd heard the evidence and he makes a finding. So tell us what he left out. Well, what he left out, first of all, was Mr. Ford said that it's an assault. So the court certainly should have analyzed whether it was an assault instead of an attempted murder. Um, he did hear the evidence, but he didn't address it at sentencing. He said, as a matter of law, I find that it's an attempted murder. I thought he said, I will make a finding that your exchange of gunfire at the sheriff's department and law enforcement officers was an attempted murder as a matter of law, in fact. That's exactly what he said. So there's fact at the beginning, fact, I'll make a finding. It's a fact. And as a matter of law, what you did amounts to attempted murder. You say that's not sufficient. I say that's not sufficient. That's right. And so Mr. Ford's objection is to, under the guidelines, this is an assault, not an attempted murder, and we're saying that that's not sufficient under the circumstances of this case. Um, he also says that his, uh, record level is incorrect. Um, there's, there's never an argument about that, but that's, that's essentially what he says. So our objection is to the procedure there that the court should have addressed and made findings of fact specific to whether this was indeed an attempted murder and the cross-reference applied. And, you know, how that would have impacted the guideline. Does that answer your question? Okay. I'll ask you another one. Yeah. Well, if you're asking, uh, does Mr. Ford argue for a different sentence? Mr. Ford did not make arguments after the court said that I find that, that, um, and you, you quoted it. I, I sort of, uh, paraphrased it, but he did not make an argument after that. And our precedent says if you don't ask for a different sentence, then we review for plain error, which requires us to find prejudice. So what's your, what's your best argument for prejudice here? Well, the argument is the court needs to address the guidelines and needs to consider whether it's an assault first and whether what guideline applies. I disagree with the government that it would necessarily come out to the same range. That would require, uh, would, would be above the 10 year maximum. So if the court applies an assault guideline and considers it that way, and it, I, you know, I don't know what the findings of fact would be. I know the court concluded, as he said, as a matter of law, that, uh, it was an attempted murder. But if you considered the findings of fact and applied the guidelines, um, we would contend that the guideline range would either, is either a base offense level of a seven or a base offense level of 14, that doesn't necessarily require the court, that doesn't necessarily mean that the guidelines are going to be, um, above a 10 year maximum. All right. Time's running short on you here. So talk to us a little bit about the actual sentencing hearing. Well, I, perfunctory may not be the right word, but, but certainly at the sentencing hearing, the court did not go through the general parameters that are required. Um, it, it did not make sure that everybody had seen the pre-sentence report. It simply skipped to the fact that it had made conclusions and it had. Let me ask you what I think are the essential questions. Did the district court address the 3553A factors? No, sir. Did he make an individualized finding as to the application of a sentence to the defendant? So if we found that to be error, what remedy do you suggest? Well, if you found solely that to be error, this, I think the appropriate remedy is a new sentencing hearing. All right. And I've noticed that there's no request either below or on appeal for a different judge, so it would go back to the same district judge? That's a tough question because these cases go back to the same district judges all of the time and, um, we didn't, it's, we're not saying that the judge is incapable of conducting an appropriate sentencing hearing. We're simply saying that the judge did not conduct an appropriate sentencing hearing. It's a little different in this case because of the ex parte proceeding. And, and that's certainly a concern where the court has already decided, or at least has expressed that he's decided what the appropriate findings are. So. Just to be clear, if we find that it's error, I'm under the impression we have to find it's plain error and it's, that it's prejudicial that, that we have the four prongs of plain error because he didn't argue for a different sentence. He didn't ask the judge for a different sentence. So, uh, you know, under our Lynn precedent, it's not enough for us to find that it was error and it's plain. We have to find that the sentence would have been different or there's, you know, a significant enough chance. What's your argument on that? Well, I don't, we don't know what the judge would have done had he come in with a clean slate at the sentencing hearing and considered all the factors. That's what we don't know from the record. And so to answer Judge Agibiji, maybe the appropriate thing is to request a different judge. All right. Thank you very much. You've got some rebuttal time. Ms. Brown, tell us what the government says. Good morning, Lucy Brown for the United States. And may it please the court, the pro se colloquy in this case between the defendant and district court was efficient, but under the law of this circuit and the facts and circumstances of this case, it was sufficient. This court has rejected the requirement that there be a formal and searching inquiry for this type of exchange between a district court and a defendant. And they've trusted district courts to use considerable discretion in how they conduct those proceedings. And the district court here did not plainly error in how it did just that. So that first prong of plain error, there is no error that occurred to begin with. This district court was required to make sure the defendant knew the penalties, the charges, and the way an attorney could be of assistance. And then of course, I understand you're saying it's plain error, but the precedent in this circuit also says that it's de novo. Is that correct? I think the error question is de novo, but here where there was no objection, it is plain error. Objection to, you're referring to the waiver of counsel? Yes, to the colloquy. Okay. And how would it be rational for someone who was potentially not informed of all their rights to object to something that they don't know? And it wasn't the defendant's responsibility to object to the colloquy. At that time, he still had defense counsel. This exchange happened while he still had defense counsel. The decision to allow the attorney to withdraw happened at the end of the hearing, after the district court had read the pretrial services report, had talked to the defendant, had asked questions about the nature of the case. His biographical information had gotten the impression from the defense attorney who was still on the case at that time, how this defendant, what this defendant's wishes were. Only at the end then did he allow that defense attorney out of the case. So if there had been some issue with the colloquy, he was still represented at that time. And that defense attorney would have had the obligation to object and did not do so. So we're under plain error review here. Though I certainly agree the error question is determined de novo as a legal question. And so here there was no error because the district court knew the defendant knew each of those things. He'd been advised of his charges. He'd been advised of his penalties. The district court told him specifically, I admonish you. It takes legal skill to appear in court. There are things lawyers know essentially that you don't know about how to conduct this. And then my opposing counsel has talked about how you look to this whole record, but I think that's actually focused on a different thing in the case law. So the examination of the whole more holistic record is to know the facts and circumstances of the defendant appearing before the court and whether he was capable of making a knowing, intelligent, and voluntary waiver. It's not about whether he could predict what would happen. None of us who have ever tried a case know you can predict what's going to happen. That's not a requirement, nor could it ever be. The more holistic examination of the record is tell us about this defendant, what do we know? And here the district court knew he was 34 years old. He'd had repeated interactions with the criminal justice system. He had chosen to go pro se at the state level on more serious charges. The defense counsel had voiced no concern. This was an experienced member of the federal public defender's office. She did not request, let us stay on a standby counsel. Let's do a competency inquiry. None of those things. She had no concern. She represented his wishes. He knew that this defendant was born in the United States and a native English speaker, and because of the questions he asked, he knew it was a conceptually simple case. This wasn't an 18 year old who'd never been before a court, who was born and raised in Japan and didn't speak much English, who was charged with 48 counts of RICO. This was a simple case with a well suited defendant to make this decision. And the district court's decision, knowing all that to allow that was not an error. And also on prong three of plain error did not prejudice the defendant. And that's the recurring theme here today. Where's the prejudice? What happened negatively to the defendant because of the way things went in court? And here the defendant has not shown that if he had a more thorough colloquy, he would have requested an attorney. We know this for several reasons. First, he'd stayed pro se at sentencing. I think we've probably all seen plenty of defendants who are pro se at trial and decide an attorney would be a good idea for sentencing. That didn't happen here. He's pro se at the state level. We know that he's committed to going pro se. If the court takes judicial notice of the documents the government submitted, we know he's still pro se at the state level and that he tried a case to a hung jury at the state earlier this year and is going pro se in his retrial next month. We also know that he never said up until and including today, he would have asked for counsel. He's never made that showing. So there's also no prejudice there. This colloquy was efficient, but it did what it needed to do in this case. And there's certainly no error, much less plain error. As to the second issue as to remedy, I'm not clear if that was a request for a different district court judge there at the end of opposing counsel's argument, but it's not clear as to the ex parte colloquy, again, what that prejudice was. I think defense counsel said, what is your position on that and what we should do? Your brief was a little open-ended on, you agree there's error, the judge discussing sentencing at this hearing. What do you think we should do about it? The brief was a little unclear. So to elucidate on that, are you essentially arguing that you concede there was error, but it's not reversible error? Essentially, or at least there's the potential that it's not. It is, I understand that it's not. How about giving us the government's definitive position on that? The government's definitive position is to trust the discretion of this court. And I'll tell you why. We take this error seriously. We don't want to say something before this court that would indicate that we don't, but we do have questions about what would be different if there's no new district court, because this defendant has received a full sentencing in front of this district court. Is it your position that we need to send it back to a new district court judge? That's certainly not our position. We think the sentencing that happened here was full and fair for the reasons that we argue in the third argument. That's certainly not our position, but we don't understand what the defendant is asking for if he hasn't made that request because he has already received a full sentencing before this district court judge. It's essentially the same question Judge Agee asked of what's the prejudice? We recognize there's error, but it puts us, and I understand it's a little unsatisfying to hear us say we just leave it to the court's discretion, but we take this error seriously. We also ourselves have wondered, okay, then what's the remedy? And that's not clear from what the defendant has asked this court. Well, it would seem like if there was an error determination there that the only remedy would be a new sentencing hearing. Unless this court found it was harmless. Again, we take this error seriously. If you assume there was going to be a remedy, I don't see how you'd get anything more than a new sentencing hearing. Certainly. I certainly agree with that. I think our question is if the defendant has even shown there's a need for a remedy, there was an error. We recognize that, but is there a recognizable remedy at this point? So would that be somewhat of a moot question colloquially if we look at the actual sentencing hearing? So I'm going to read from page 179 of the joint appendix because it seems like to me this is the complete total sentencing explanation. The total offense level is category 42. That produces a guideline range of 360 months to life. Statutory mandatory or statutory maximum is 120 months. So I'll impose a sentence of 120 months. And there's no discussion of the 3553A factors. There's no individualized application to the defendant. How does that stand up? We recognize that those things should have happened. We're again on that prong three of plain error where the defendant has the burden at this point to show this court that that lack of explanation made a difference. And he has not and cannot do that in the circumstances of this case. There was no explanation, but it didn't make a difference to this defendant sentencing in this case. That district court had presided over the trial. Right. But if he doesn't know why the district court did what it did, how does he make a reasoned objection? That's the law of this circuit. He has to ask for something different and he did not do that. So he put himself in this position. He didn't ask for a different sentence. He did not come before the court and give the court a reason to do something different. And so the district court gave the maximum, I recognize, but it was still one third of his earned guidelines range. We would disagree with defense counsel's calculation of alternative guidelines ranges. That's in the PSR that if not a cross reference, his base offense level still would have been at 26. It was always going to be above 120 in any permutation I've done. There's nothing that this in the record that this defendant can show the court, which is his burden now, to say if there had been more explanation, the district court would have buried down more than one third of the earned guidelines range. And that makes sense because of the facts of this case, this defendant shot at two law enforcement officers at close range on the side of the road. The one he shot multiple times about the trunk of his body was holding his arm loosely and looking away. When the defendant opened fire, the district court had presided over that trial. It had just heard gutting allocution from that victim. I'm sorry? The district court had said those things. We wouldn't have these questions. If the district court had said those things, we wouldn't be under plain error. But I think it still is a sufficient sentence under that third prong of plain error because the defendant now has to show you that this would have gone below 120 months. And there's simply nothing in the record to point to, and he hasn't, to show that that would have happened. The district court had also just heard that victim allocution. It had also just heard from the government about the other shooting where this defendant and this gun were in the location of a carjacking turned double shooting near the defendant's Florida residence about three weeks before this double shooting. And there's simply nothing that defendant has shown the court, which is his obligation at this point. We'd be having a different discussion if he had asked for a different sentence. I recognize that, but it is his obligation and there's nothing he has shown this court to show anything would go differently. If you consider even what those arguments could have been, it's tricky to come up with them. And he didn't make any of those. He was never going to accept responsibility. He was never going to express remorse. Certainly not while he has pending state charges related to this offense, that wasn't going to happen. If you look at his family history, his addiction, he doesn't have these types of arguments we typically see defendants make. So this just was never going to be a sentence below 120 months. So though there should have been explanation, there was no prejudice for the lack. The error here, in your view, isn't lack of the district court doing its job. It was the failure of the defendant to make a precise objection. We recognize the district court should have explained its sentence, but under plain error review, which where we are because the defendant did not ask for something different, yes, then this defendant cannot prevail on plain error review. We do recognize there should have been explanation, but that's not the end of the inquiry. It changes the inquiry and the defendant can't prevail under plain error review. Is the government or this U.S. Attorney's Office considered raising the explanation objection at the end of sentencing? I know it's not your burden, but it would make your job easier on appeal, wouldn't it? If the representative from your office and the district court and the judge ask if there's anything further, says, could you put a little bit more on the record, Your Honor? I think that happens sometimes. I think like a lot of things about this case, in any criminal case, there's a case-by-case determination by an AUSA standing in the courtroom. And I think here, for all the reasons we've discussed, it was clear that this was always going to be the sentence. We haven't discussed the cross-reference question. The government certainly believes that was correctly decided in this case where the district court had presided over that trial, had heard the evidence of shooting at the victim at close range. It also, the two arguments defendant raised for that cross-reference included, while I'm being tried for these at state court level, no one has found any case law to indicate that weighs on this determination at all. And actually it was an assault. And that question, that argument belies the defendant's sworn trial testimony directly, where he was saying, I was in fear for my life, so I started shooting. That's not someone who was shooting to scare someone, to put them in a fear of an injury. That was someone who was shooting to kill someone. And that's what the district court found, I would agree with Judge Rushing's analysis, as a matter of fact, which then informed its legal conclusion that this was indeed an attempted murder as a matter of law, making that a proper determination. Is that everything? Yes, Your Honor, unless the court has further questions. All right. Thank you very much. Mr. Tindall, you've got some rebuttal time. And you might start with addressing the government's argument that even if the district court erred in the sentencing hearing for the reasons we've previously discussed, that you can't prevail under the third prong of the plain error. Well, the government gives the court a lot more grace than it gives a pro se defendant, certainly in this case. I would say that Mr. Ford did object to the sentencing proceeding, objected specifically to the guideline range, which raises in a court's mind that there's some question about the analysis in the pre-sentence report. So Mr. Ford did do that. Obviously, one of the downfalls of representing yourself is you don't know all the procedures, things like that. The court does know the procedures though. The court knows you can't have an ex parte proceeding with a U.S. attorney. The court knows that it's supposed to explain itself. The cases are clear about that and it's in every case. This is not one of those objections where you're trying a case and something comes in the evidence and defense counsel lets it slide and then says, raises it on appeal. This is something that happens. Let me ask you, I'm looking at page 171 where the defendant says, I have objections, short version is the criminal history says it's a score of three. I believe it should have been a score of two and then a little bit later, my second objection is the offense level computation, which we've talked about. Is that, in your view, sufficient to show prejudicial deficiency? Well, Your Honor, he's clearly saying, I don't believe the calculations are correct. Does he go on to say, judge sentenced me to 80 months instead of 120? No, he doesn't do that. But he does raise the issue with the court that I don't agree with what's in the pre-sentence report and the appropriate thing for the court to have done and say, well, let's talk about it. Let's consider what your objections are and go through them and then make findings of fact and then make findings as to the reasons or the explanation for the sentence. And it's especially troubling given the prior ex parte proceeding where the court essentially announced what it's going to do. It makes you certainly feel like the court is not going to consider those objections, at least consider them specifically and fairly. So, did the district court specifically adopt the pre-sentence report? I don't think the court, I don't remember the court addressing the pre-sentence report, I remember him, the court, turning to the probation officer and saying, you know, am I correct that the guidelines are going to be this no matter what, and the probation officer says yes and proceeding from there. It is not the usual way things are done or should be done. I mean, based on the Gall and the Rita decisions and in this particular case, I would ask the court to find that Mr. Ford's objections were sufficient given his circumstances and given the atmosphere in the courtroom. I will briefly address that Singleton clearly says that they, that the court's review waiver of counsel de novo, it puts a lawyer in a very awkward situation to say a client doesn't want me to represent them and then start trying to raise objections. I don't think that's the law. I think this court's precedent in cases that have followed Singleton say that. At a minimum, we'd ask the court to, we would ask the court to order a new trial and at a minimum, to order a new sentencing proceeding. I don't think, plain error or not, that this court can approve proceedings that are, again, as ex parte sentencing proceedings and then end with a total lack of explanation of, and consideration of 33A factors and explanation of sentencing. So we'd ask you to reverse. Thank you very much. Uh, we will come down and greet, uh, counsel, but first, Mr. Tindall, the court wants to express its sincere appreciation to you for undertaking this as a court appointed counsel. Um, we could not do our job if there weren't members of the bar like you who would undertake to represent defendants in this circumstance and the court appreciates it.
judges: G. Steven Agee, Allison J. Rushing, DeAndrea Gist Benjamin